GERALD B. STONE, trustee in bankruptcy of TIP TOP TAILORS, INC., bankrupt, appellant,

*v.*

ALLIED CLOTHING CORPORATION, a corporation of the State of New Jersey, DOMINION HOLDING COMPANY, a corporation of the State of New Jersey, TIP TOP TAILORS, LIMITED, a corporation, and NATHAN BILDER and WILLIAM H. HALL, escrow agents, respondents.

[Argued May term, 1946.   Decided September 13th, 1946.]

*Messrs. Bilder & Bilder & Kaufman* (*Mr. Walter J. Bilder* and *Mr. Albert Freeman*), for the appellant.

*Mr. Charles S. Okin* and *Mr. Edward R. McGlynn,* for Allied Clothing Corporation and Dominion Holding Company.

*Mr. George W. C. McCarter,* for Tip Top Tailors, Limited.

The opinion of the court was delivered by

BODINE, J.

This is a suit by the trustee in bankruptcy to set aside transfers made by the bankrupt while insolvent within four months before the filing against it of a petition in bankruptcy. The action, among other grounds, finds support in *sections 60 (a)* and *60 (b)* of the Bankruptcy Act of the United States, *Title 11 U. S. C. A.*

The defendants are the Allied Clothing Corporation, a New Jersey corporation; the Dominion Holding Company, a corporation of the State of New Jersey; Tip Top Tailors, Limited, a corporation, and Nathan Bilder and William H. Hall, escrow agents.

The transfers were eight in number. Four of them were made to the Dominion Holding Company; three to the Allied Clothing Corporation, and one to Tip Top Tailors, Limited. Some of the transfers consist of the payment of money and three were the transfer of personal property.

In the Court of Chancery it was found that at the time of the transfer the bankrupt, Tip Top Tailors, Inc., was insolvent. That court also held that none of the defendants had reasonable cause to believe that the bankrupt was then insolvent. We do not agree with that fact finding.

Tip Top Tailors, Limited, organized the bankrupt and owned a majority of its capital stock and some of the bankrupt's officers and directors were also officers and directors of that concern. How closely all the parties were related in business is indicated by the following: Joseph Dunkelman, president and director of the bankrupt, was a director of Tip Top Tailors, Limited, and a director and officer of the Allied Clothing Corporation. David Dunkelman was a director of the bankrupt, president and director of Tip Top Tailors, Limited; while Hugh P. MacKechnie was a director and vice-president of the bankrupt, general manager and director and secretary of the Canadian concern, and a director and officer of the Allied Clothing Corporation. Charles M. Hilton and Jerome Hilton were on the Board of Directors of the Allied Clothing Corporation and the Dominion Holding Company, and officers thereof; while Charles M. Hilton was a director of the bankrupt.

The bankrupt's business was the sale, at retail, of men's clothing. It began business about May of 1939. From the beginning it operated at a loss. From the date of its organization to January 1st, 1940, its losses amounted to $115,405.55. During the next nine months it lost an additional sum of $137,797.92.

In the summer of 1940, an accountant was employed to

make a survey of the bankrupt's business. He advised the bankrupt and representatives of Tip Top Tailors, Limited, that the bankrupt needed additional funds and that a revision of its store operations and a modification of its manufacturing contract with Allied Clothing Corporation was necessary if it were to weather the storm.

In August of 1940, the bankrupt lacked funds to pay Allied Clothing Corporation its weekly payroll under the manufacturing contract. By September 20th, 1940, two weeks before the first of the series of transfers, the bankrupt's past due accounts payable aggregated $65,498.86. By the end of that month, the bankrupt's past due accounts payable had reached $96,515.49. It was not able to pay its current indebtedness.

On September 27th, 1940, a meeting was held attended by the interested persons and an unaudited balance sheet, as of August 31st, 1940, was produced. At this meeting, it appeared that the bankrupt had a net worth of $22,949.40. The plan was to survey the situation and see if further capital could be secured.

Other meetings were held and on October 3d, 1940, an agreement was prepared and entered into which provided as follows: that the bankrupt assign to the Dominion Holding Company a claim it had against the Allied Clothing Corporation in the sum of $14,750, and promise to execute and deliver to the Dominion Holding Company a note for $9,150 payable December 31st, 1940. The bankrupt also promised to transfer to the Dominion Holding Company fifty shares of capital stock of Allied Clothing Corporation held by it. The bankrupt also agreed to execute and deliver to the Dominion Holding Company, on October 7th, 1940, a bill of sale for the fixtures and furniture in the show room occupied by it and the Allied Clothing Corporation jointly. The bankrupt also promised to pay to the Allied Clothing Corporation, on October 4th, 1940, $6,000 on account of an indebtedness of the bankrupt to the defendant and to pay the balance of the claim, amounting to $12,478.83 on October 7th, 1940. All claims and contracts between the parties were to be canceled. The bankrupt was to remove from the possession of Allied Clothing Corporation all garments in process, furniture and

fixtures. The bankrupt paid the cash on October 4th to the Allied Clothing Corporation. Tip Top Tailors, Limited, furnished the funds for making this payment.

On October 21st, 1940, the bankrupt physically transferred to Tip Top Tailors, Limited, the merchandise as security for the repayment of the moneys advanced to it.

At a subsequent meeting, an accountant's statement was presented which showed that on September 30th, 1940, the bankrupt was insolvent to the extent of approximately $60,000. Hope was still present that the capital might be raised.

As before indicated, the law is settled by section 60 (a) and 60 (b) of the Bankruptcy Act. There is no doubt that there was a transfer within four months prior to the bankruptcy proceeding; that the transfer was on account of an antecedent debt; that the bankrupt was insolvent, and we think that there is no doubt that the transferee had reasonable cause to believe at the time of the transfer that the bankrupt was then insolvent.

In *Knauer* v. *Clevenger, 117 N. J. Eq. 445,* this court said: "* * * Reasonable cause to believe that a transfer will effect a preference does not require proof either of actual knowledge or actual belief, but only such surrounding circumstances as would lead an ordinarily practical business man to conclude that the transfer will result in a preference."

It seems to us obvious that all interested parties must have had full knowledge of the conditions as they then existed. They were all astute business men. One of the officers of the Dominion Holding Company, when the agreements were being worked out, said, "What happens to all this if the bankrupt goes bust?" and one of the lawyers answered everything would have to be paid back.

To assume that men familiar with business could know the intimate details of the bankrupt's business and not have reasonable cause to believe that the bankrupt was then insolvent is an affront to intelligence. That they may have hoped that, by the use of additional capital, something might be salvaged does not mean that they did not have reasonable cause to believe that the bankrupt was then insolvent. The

law cannot substitute wishful thinking for facts. If they looked at the situation as it was laid before them they must have had reasonable cause to believe in the insolvency. They may have hoped that the situation was not so bad, if they could salvage something from the concern. However, war was imminent and the prospect in the civilian clothing line was not bright.

Suffice it that, in our view, the transfers in question were void under the Bankruptcy Act and must be set aside.

The decree below will be reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, OLIPHANT, WACHENFELD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 14.